WILDER GRAIN COMPANY *vs.* ALBION L. FELKER,
administrator.

Middlesex.     November 5, 1936. — December 2, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Contract*, Implied. *Executor and Administrator*, Expenses of administration, Insolvent estate.

An action of contract against the administrator of an estate in his representative capacity was maintained by one who, before the appoint-

ment of the administrator, supplied feed, which was used before such appointment to fulfill an immediate, absolute and imperative need to preserve live stock owned by the intestate at the time of his death; and the plaintiff's claim was one of the "charges of administration" which, upon the estate being declared insolvent, was entitled to priority under G. L. (Ter. Ed.) c. 198, § 1.

CONTRACT. Writ in the District Court of Lowell dated January 29, 1936, directing attachment of "the goods or estate of Albion L. Felker . . . as he is administrator of the estate of Samuel P. Pike."

Upon removal to the Superior Court, the action was tried before *Cox*, J. After a verdict for the plaintiff in the sum of $214.35, the action was reported to this court for determination whether, on all the material facts and on the pleadings, the plaintiff was entitled to recover on either count of the declaration.

*R. B. Walsh*, for the defendant.

*M. G. Rogers*, for the plaintiff.

QUA, J. This is an action of contract in two counts, stated in the report to be for the same cause of action, wherein the plaintiff seeks to charge the defendant in his capacity as administrator of the estate of one Pike, late of Tewksbury, deceased, with the value of grain delivered by the plaintiff at the farm where Pike was living at the time of his death. The answer is a general denial.

Pike and his daughter Mrs. Daw were joint tenants of the farm, upon which they lived with Mr. Daw, Pike's son-in-law. Pike died February 5, 1935. There was a contest over the appointment of an administrator for his estate. On March 14, 1935, the defendant was appointed. At the time of Pike's death he had on the farm three horses and about one thousand hens, which became assets of his estate. A few days later the supply of feed for the horses and poultry was exhausted. None of the heirs and no other person offered to assist in caring for this livestock or to furnish necessary grain, whereupon Daw with Mrs. Daw's consent ordered from the plaintiff the grain in question. "The plaintiff looked to the estate and not to Daw for payment." The grain was delivered on February 15, February 21, March

1 and March 9, all deliveries being after the death of Pike and before the appointment of the defendant as administrator. All the grain "was used in the reasonable feeding of the poultry and horses." Both parties seem to regard these words, quoted from the report, as meaning that the grain was so used before the defendant's appointment, and we deal with the case on that basis. The defendant was not aware of the ordering and delivery of the grain until March 30. Pike's estate was represented insolvent before this action was brought.

The plaintiff's first count sets up a direct claim against the estate for the grain delivered and used. The second count is based upon an assignment from Mr. and Mrs. Daw to the plaintiff of any claim which they or either of them might have had against the estate on account of the grain. The plaintiff has had a verdict on each count for the full value of the grain. But as it is expressly stated that the plaintiff looked to the estate and not to Daw for payment, it is clear that neither Daw nor Mrs. Daw incurred any personal liability. It follows that neither of them under any theory of the law had any claim against the estate; that the plaintiff acquired nothing by the assignment; and that any judgment for the plaintiff must rest solely upon the verdict which has been returned on the first count.

The question to be decided may be stated thus: Can a stranger who, under the circumstances disclosed, furnishes feed used in the necessary preservation of the livestock belonging to the insolvent estate of a deceased owner recover its value as a preferred claim from an administrator subsequently appointed?

Broad considerations of justice favor a plaintiff who has thus not only performed an act of mercy but who has also saved for the estate assets which would otherwise have been lost. It would not be fair and just that creditors who have themselves done nothing should profit at his expense. If Pike had left a sufficient supply of grain on the farm, would it have been a wrongful interference with assets of the estate if a member of his household had continued to feed that grain to the livestock in the interval before the appointment

of the administrator? *Perkins* v. *Ladd*, 114 Mass. 420, suggests that it would not be. See also *Brown's Administrator* v. *Sullivan*, 22 Ind. 359, and cases cited in Woerner, Adm. (3d ed.) § 191. Yet the effect upon the estate is substantially the same where a member of the household procures someone to furnish grain at the expense of the estate. It would seem that the law should raise a promise based upon public policy and necessity on principles analogous to those upon which a promise is implied in favor of one who has supplied necessaries for the burial of the deceased, and that as the administrator has in no way bound himself personally by any act of his own, such liability, like that for expenses of burial, should be a direct charge upon the estate itself to be enforced by action against the administrator in his representative capacity and not in his individual capacity. See as to expenses of burial *Hapgood* v. *Houghton*, 10 Pick. 154; *Sweeney* v. *Muldoon*, 139 Mass. 304; *Durkin* v. *Langley*, 167 Mass. 577; *Joseph S. Waterman & Sons, Inc.* v. *Hook*, 246 Mass. 522, 526; *Breen* v. *Burns*, 280 Mass. 222, 224.

Such *quasi* contract binding upon the estate arises only where the need is immediate, absolute and imperative in order to preserve the estate itself and where that need would otherwise remain unsatisfied. Nothing less will justify the intervention of a stranger thus to impose a charge upon the estate outside the regular course of administration. Merely that the service performed was desirable or in some degree beneficial to the estate is not enough. It is upon this ground, we think, that the present case is to be distinguished from *Luscomb* v. *Ballard*, 5 Gray, 403, and *Yarrington* v. *Robinson*, 141 Mass. 450. It seems evident that the court in those cases and in several others, such as *Tomlinson* v. *Flanagan*, 287 Mass. 38, 45, in stating general rules, did not have in mind an exceptional case like this. *Mathie* v. *Hancock*, 78 Vt. 414, is distinguishable for similar reasons.

This decision is not at variance with the rule of *Kingman* v. *Soule*, 132 Mass. 285, 288, under which an executor or administrator is liable personally and not in his representative capacity upon contracts made by himself. It derives further support in various aspects from *Edwards* v. *Ela*,

5 Allen, 87, 90, *Chase* v. *Corcoran*, 106 Mass. 286, *Bacon* v. *Parker*, 12 Conn. 212, 216, *Tucker* v. *Whaley*, 11 R. I. 543, *O'Reilly* v. *Kelly*, 22 R. I. 151, *Murray's Estate*, 56 Ore. 132, 136–138, *Estate of Bryant*, 180 Penn. St. 192, and *Lenz* v. *Brown*, 41 Wis. 172.

We are further of the opinion that the plaintiff's claim is one of the "charges of administration" which have priority over "debts" under G. L. (Ter. Ed.) c. 198, § 1. Clearly the nature of the claim would have given it that status, if the administrator himself had ordered the grain. Under the broad classification intended by the statute it is immaterial that because of peculiar circumstances the liability to which the estate is subject had its origin before his appointment. Judgment must be entered on the verdict returned by the jury on the first count. G. L. (Ter. Ed.) c. 198, § 31.

*So ordered.*