RICE, DECEASED, ESTATE OF, IN RE.

Probate Court, Franklin County.

No. 200595.   Decided May 6, 1963.

*Messrs. Fontana, Ward & Kaps*, by *Messrs. William W. Brown* and *Paul F. Ward*, for the American Archives Association.

*Mr. Eugene P. Everhart* and *Messrs. Schwenker, Teaford, Brothers & Bernard*, by *Mr. C. Stanley Taylor*, for the Administratrix.

*Mr. James C. Justice* and *Messrs. Lucas, Prendergast, Albright & Warren*, by *Mr. Robert E. Albright*, for the Columbus Bar Association.

VAN HEYDE, J. American Archives Association, by its attorneys, made application to this Court for admission of certain assignments executed by various persons having an interest in the distributive proceeds of the estate of Bertha M. Rice, deceased. The application also requested a determination of the validity of said assignments.

The application to admit the assignments was excepted to by the Administratrix of the Estate and a hearing on said matter was requested and was held before the Judge of this Court.

The Unauthorized Practice of Law Committee of the Columbus Bar Association and of the Franklin County Court of Common Pleas filed an "Amicus Brief" opposing admission of said assignments and requested permission to participate in said hearings thereon as "Amicus Curiae" on behalf of the Court's Committee for the Unauthorized Practice of Law.

The Court granted the request and permitted representatives of the Court's Unauthorized Practice of Law Committee to participate.

Two hearings were held before the Court and testimony taken of all witnesses and various and sundry documents were admitted into evidence.

The Court, upon hearing of the witnesses, examination of the transcript and all of the evidence submitted together with an examination and review of the various briefs submitted by counsel for all the parties of this action, makes the following findings of fact and conclusions of law:

*FINDINGS OF FACT*

1. The decedent died intestate at Columbus, Ohio, on February 23, 1961.

2. The application for letters was filed in this Court on February 24, 1961, and pursuant thereto, letters were issued on the same date to the Administratrix, Florence Bell.

The letters, or application for appointment, reported an estate of an estimated amount of $215,000. The next of kin listed on said application were all cousins with a notation, "a number of other heirs to be determined."

3. The inventory for said estate was filed on April 4, 1961. The inventory reported assets worth $220,453.73.

4. Assignments dated prior to March 24, 1961, were mailed by American Archives to various persons who were advised of their possible interest in this case. (See assignment of Orville Serrott, signed on March 24, 1961. It had to be forwarded before said date.) This makes the contact by American Archives Association with the interest holders within a period of time less than thirty (30) days after the appointment of the Administratrix.

5. Mr. Ossie K. Ramsey, correspondent for the Applicant Company, testified that he made his first contact with the administratrix's attorney the last part of May, 1961, having previously testified that he was on his own, so far as this estate was concerned, from March, 1961, to the last part of May, 1961. (See Transcript, page 264.)

Ramsey testified that he ascertained from the application of letters that there were eight persons, cousin descendants of the Radcliff grandparents listed as known heirs with a notation, "others to be determined later." (Transcript, page 243.)

Examination of the application for letters filed February 24, 1961, fails to show any reference to "Radcliffe grandparents."

Correspondent Ramsey bases his right to proceed on this case at an early date because his experience for eighteen (18) years on two hundred (200) similar cases proved that it was necessary to start early in order to complete them. In answer to a question, "Time to complete, now what do you mean by 'complete'? How do you consider one complete?" Answer—"When we have located all the heirs and perhaps have assignments from all of them." (See Transcript, page 272.)

6. Mr. Sheets, officer of American Archives Association from the Washington office, testified that letters requesting "Agreement and Assignments" were mailed out before anyone contacted the Administratrix or her attorney. (See page 376, Transcript.) In fact, the testimony of Mr. Ramsey, the correspondent, in Columbus, and Mr. Sheets, the officer in Washington, both seem to indicate that each was getting their information from the other. The fact remains that the letters were on their way to interested parties of this estate before March 24, 1961.

7. The contracts of assignment were prepared by American Archives Association and mailed out to the various interest holders prior to any contact by American Archives Association with the firm of attorneys "who have now been engaged to proceed on our behalf." (See Petitioners Exhibit IV.)

8. The contract "Agreement and Assignment" recites the consideration for the forty (40) percent due American Archives Association. (See the sixteen [16] contracts filed.)

9. The letters that were forwarded to the various persons who were interested in the Estate contained various statements that lead one to believe that the case was reported to American Archives Association. Then they go on to recite the service given to the interest holder in exchange for the forty (40) percent assignment of said interest. The assignment that accompanied the letters did not disclose the name of the estate involved, it being furnished later.

10. Petitioners Exhibit III—Letters to an interest holder recites a failure to cooperate with the Association. This letter was mailed out before the Association, its correspondent or its attorney contacted the Administratrix of this estate.

## CONCLUSIONS OF LAW

Section 2101.11, Revised Code—*Custody of Files*

Each Probate Judge shall have the care and custody of the files, papers, books and records belonging to the Probate Court. He is authorized to perform the duties of Clerk of his own Court.

Section 2101.24, Revised Code—*Jurisdiction*

The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the Court . . .

Section 2123.01, Revised Code—*When proceedings to determine heirship may be had.*

Whenever property passes by the laws of intestate succession, or under a will to a beneficiary not named in such will, proceedings may be had in the probate court to determine the persons entitled to such property.

62 Ohio Law Abs., 595— *Stofft* v. *O'Shaughnessy*

1. An Administrator of an estate has the duty under the law not only to properly administer the estate but also the

duty to distribute the property of the decedent to the persons entitled thereto according to law.

2. The primary duty to determine the heirs of a decedent rests on the administrator.

171 A. L. R., 351—"*Heir Hunting*"

The Courts have held such assignments void and unenforceable for various reasons, namely:

1. As an unauthorized practice of law.

2. As violation of statutory or common law rules against champerty and maintenance.

3. As contracts in violation of public policy.

See *In re Butler Estate*, 29 Cal., 644—177 Pacific 2nd, 16.

The questions before this Court are as follows:

1. Should this Court permit these unsolicited "Heir Hunting" organizations to operate in open competition with the duly appointed and authorized Administrators of the Probate Court?

2. Are the agreements and assignments valid?

The evidence in this case shows that the American Archives Association was extremely active in the solicitation of heirs prior to any contact with the Administratrix or her attorney. The evidence also shows the solicitation prior to the filing of the inventory.

The question of the validity of the contract of assignment necessarily centers around the methods used by the American Archives Association in obtaining the "agreements and assignments" and the consideration for same.

Two expert witnesses testified as to the value of the services rendered by American Archives Association—they also told of the valuable services rendered in "Lost Heir" cases. The Court recognizes the value of services rendered by American Archives Association and other "Lost Heir" organizations when requested by the estate or the Court, but this Court will not tolerate, sanction or permit these "self-appointed Lost Heir organizations" to compete with duly appointed Administrators or Executors of estates.

In the instant case, the correspondent, Mr. Ramsey, examined an "application for letters" and a death certificate, *and he determined* (not the Court or the Administratrix) that it was necessary "to get started early" so he could complete

them. Mr. Ramsey said his work was complete when ''He had located all the heirs and perhaps have assignments from all of them.'' (In this case, the ''Lost Heirs'' were being found within thirty (30) days of the appointment and just ahead of the Court's Administratrix.)

This Court is its own Clerk and has custody and jurisdiction over its files, papers, cases and records, and as such, does not intend to permit any *self appointed person or organization* to operate in open competition with duly appointed fiduciaries. Such activity is against public policy and borders on ''ambulance chasing'' when not solicited by the Administratrix or authorized by the Court.

In the first place, the applicant association is a ''volunteer,'' ''one who takes it upon himself to search for 'lost heirs' without being invited to do so by the fiduciary of the estate, her attorney, or by authority from the Court.''

As such volunteer, American Archives Association sent out a letter on March 28, 1961, before contacting the estate or the Court. The letter read as follows:

March 28, 1961

Airmail

Mrs. Carmen Kempton
Dillondale, Ohio

Dear Mrs. Kempton:

American Archives Association is engaged in searching for missing and unknown estates. In the course of our work an estate matter has come to our attention in which it appears from our research that you may be entitled to share in the distribution.

The explanation of our interest in this matter, we wish to point out that when a matter of this kind is reported to us we make an investigation to identify and locate the heirs at our own expense. After we have done this, our only hope of getting reimbursement for our time and expenditure is by securing

from the heirs an assignment which allows us a reasonable portion of their share in the estate in exchange for our service in disclosing to them the location of the estate, in gathering proof to establish their right, and in otherwise aiding them to recover their share. In these matters we pay all costs and expenses incurred by us and if the heirs get nothing from the estate—we get nothing. We make no other charge and expect no other compensation. We do not ask the heirs for any other payment. If you are in fact a lawful heir to this estate, and we believe you are, your right to participate in the distribution can be established without inconvenience of any kind to you.

We are enclosing our standard form of assignment which provides for our compensation in the amount of an undivided two-fifths interest of whatever may be payable to you from this estate. The remaining three-fifths will be payable to you. If you will inform us of your expense in connection with the signing of this document before a notary public, we will be pleased to reimburse you therefor.

We trust that you will give our offer of service your prompt attention; and, if you desire to check upon our standing, we refer you to the National Bank of Washington, 14th & G Streets, N. W., Washington 5, D. C. Attention: Mr. J. Leo Lynch, Vice President. Also, the following named attorneys are acquainted with the service of our organization and we take the liberty of referring you to them; Mr. John Buchman, 1st National Bank Building, Canton, Ohio, and Mr. John D. Wortman, 2200 First National Tower, Akron 8, Ohio.

Very truly yours,

/s/ Robert F. Sheets
AMERICAN ARCHIVES ASSOCIATION

Encl.
f/t

After that letter was forwarded to the interest holders,

various other letters were forwarded to them. This Court feels that the individual persons were contacted by the Association in a manner that led the individuals to believe that they were being represented by the Association in all matters necessary to recover their share in the unknown estate.

The Association also advised the individuals that they had employed counsel to proceed in the matter, and that the interest of the individual was identical to that of the Association.

Because of the above activity, it is the Court's opinion that the *Association was in fact practicing law* in this case without authority from the Court or the Administratrix of the estate.

The "Agreement and Assignment" form used by the Association sets over and assigns forty (40) percent of all right, title and interest in and to said fund of money that the individual may receive from the unknown estate for and in consideration of the Association, or its agents, having revealed to the individual the fact that there is a fund of money or other assets which may be due them from the estate.

In conclusion, it is the opinion of this Court that American Archives Association voluntarily entered into this case and on their own, sought out the various interest holders in open competition with the Court's duly appointed and acting Administratrix.

The American Archives Association was contracting to sell information and representation, including services of attorneys, for a forty (40) percent portion of all monies received by the interest holders from a possible share of an unknown estate.

The methods used by American Archives Association go far beyond the furnishing of a genealogical survey or service. Genealogical services are certainly *not per se* the unauthorized practice of law. However, representation of individuals for the purpose of establishing their rights and aiding them to recover their shares, and engaging counsel for *their mutual* interest at forty (40) percent of the interest holders possible share, is over and beyond the furnishing of a genealogical survey and service and is against public policy and constitutes the unauthorized practice of law and involves champerty and maintenance.

It is therefore the order of this Court that the motion

of the applicant for admission and validation of their various assignments for joint payment with the individual beneficiaries be denied.

It is further ordered that the Administratrix make distribution only to the individual beneficiaries.

An Entry in accordance with the above order shall be drawn by counsel.