89 Wn.2d 140 (1977)
570 P.2d 131
INTERNATIONAL TRACERS OF AMERICA, Appellant,
v.
ESTATE OF ERIC HARD, ET AL, Respondents.
No. 44624.
The Supreme Court of Washington, En Banc.
October 13, 1977.
*142 Buzzard & Glenn, P.S., by Frank E. Morris and Jerome L. Buzzard, for appellant.
Fred D. Gentry (of Bean, Gentry & Rathbone), for respondent Johnson.
Layman, Mullin & Etter and Frank J. Gebhardt, for respondents Heehn, et al.
HOROWITZ, J.
The principal issue here is the constitutionality of RCW 63.28.330, which places a 5 percent limit on fees a person can recover for locating property that he knows has already been reported or delivered to the Department of Revenue.[1]
Plaintiff-appellant International Tracers of America (Tracers) is a Florida corporation engaged in the business of locating heirs of decedents whose property would otherwise escheat to the state in which the property is located. On December 8, 1971, four heirs of Eric Hard (who died in Alaska) and Tracers entered into a contingent fee contract, signed in Minnesota, under which Tracers purportedly undertook to locate the assets of decedent Hard. The agreement drafted by Tracers, further provided that if "Tracers is able to succeed in securing control of assets of the Estate of Eric Hard, and, in the event a distribution of said assets is made to the undersigned heirs, then and in that event, we, the undersigned, agree to pay Tracers 40 percent of any amount which may be collected and distributed to the undersigned." None of the four heirs were or are residents of or domiciled in this state.
*143 At the time the contract was entered into Tracers had known since 1970 that decedent died owning shares of stock worth approximately $23,000, the proceeds of which were being held by the State of Washington as a result of escheat proceedings in this state. The four heirs did not have this information.
In 1972 Minnie Johnson, one of the four signatory heirs, commenced probate proceedings in Thurston County, Washington, to administer and distribute decedent's assets to his heirs. She was appointed administratrix of the estate. Tracers filed no creditor's claim in the estate.
After the four heirs, including the administratrix, refused to pay Tracers its fees for its services, Tracers sued the four heirs and Minnie Johnson in her capacity as administratrix to recover its fees. Defendants answered raising certain affirmative defenses, including illegality of the contingency fee agreement, and counterclaimed for damages for harassment by Tracers in its efforts to collect the sums sued for. The trial court entered a judgment for Tracers against the four heirs (not the estate) but limited recovery to 5 percent of the ultimate distribution, and dismissed each defendant's counterclaim. Tracers appealed. Defendants did not cross-appeal.
Plaintiff contends: (1) Washington law, including RCW 63.28.330 does not govern this case; (2) Tracers is entitled to recover against the administratrix of the Eric Hard estate as well as the four heirs; and (3) even if the Washington law applies, RCW 63.28.330 is unconstitutional and therefore plaintiff's recovery is not limited to the 5 percent awarded. We do not agree with these contentions and affirm the appealed judgment.
We agree with defendants and the trial court that the validity of the contract here is to be determined by the Washington law. Plaintiff contends that under Baffin Land Corp. v. Monticello Motor Inn, Inc., 70 Wn.2d 893, 425 P.2d 623 (1967) the "significant contacts" test determines the validity of the contract. In Baffin we held that under the significant contacts test the court should consider all *144 the significant points of contact, including the place of contracting, place of negotiations, and place of performance. Plaintiff contends it is impossible to determine what state had the most significant contacts with the transaction and therefore Washington law does not govern, plaintiff not stating what other law it claims does govern. There are several reasons, however, which require use of Washington law.
[1] First, no actual conflict between the law of Washington and the law of any other state claimed applicable is shown to exist. Without such a conflict, courts will not engage in a conflict of law analysis. B. Currie, Selected Essays on the Conflict of Law 176 (1963). There is no proof introduced as to the content of any foreign law claimed by Tracers to be applicable here. Nor did Tracers plead the law of any other state claimed to be applicable as required by RCW 5.24.040. Without such a pleading, the trial court was not required to take judicial notice of the law of any other state. RCW 5.24.010-.070. In re Adoption of Candell, 54 Wn.2d 276, 340 P.2d 173 (1959); Save-Way Drug, Inc. v. Standard Inv. Co., 5 Wn. App. 726, 490 P.2d 1342 (1971). Without pleading or proof of applicability of foreign law, such law will be presumed to be the same as Washington's. In re Estate of Nelson, 85 Wn.2d 602, 606, 537 P.2d 765 (1975); Granite Equip. Leasing Corp. v. Hutton, 84 Wn.2d 320, 324, 525 P.2d 223 (1974); Norm Advertising, Inc. v. Monroe St. Lumber Co., 25 Wn.2d 391, 171 P.2d 177 (1946). See Byrne v. Cooper, 11 Wn. App. 549, 523 P.2d 1216 (1974).
We note in passing that other states have banned the type of business in which Tracers is engaged on the ground that the business constitutes the unauthorized practice of law or is otherwise void as against public policy. Florida Bar v. Heller, 247 So.2d 434 (Fla. 1971); Skinner v. Morrow, 318 S.W.2d 419 (Ky. 1958); In re Estate of Rice, 24 Ohio Op.2d 379, 193 N.E.2d 566 (P. Ct. 1963).
[2] Finally, we note the opinion in Baffin Land Corp. v. Monticello Motor Inn, Inc., supra at 900, in applying the *145 significant contacts test, places great emphasis on the importance of place of performance. Cf. Restatement (Second) of Conflicts § 202(2) (1971).
Assuming arguendo it is necessary to resort to the significant contacts test under Baffin to determine whether Washington law governs, that test is met here. Under the contract, Tracers was required to attempt to secure control of the assets of Hard's estate. At the time the contract was entered into, Tracers knew that Hard's assets were in the state of Washington and had been, or were in the process of being, escheated to the State of Washington. To secure the assets it was necessary to institute probate proceedings in Washington under Washington law to obtain control of those assets from the Washington State Department of Revenue, and to determine who the heirs were and what their net distributive shares should be. Under these facts, the place of performance was the most significant contact thus rendering Washington law applicable.
Tracers next contends the administratrix of the estate, in addition to the heirs, is liable on a quantum meruit basis for services allegedly rendered by Tracers to the estate to preserve its assets. Tracers claims either 40 percent of the distributive shares or an unspecified amount up to that figure. No contract was entered into by Tracers with the administratrix in her capacity as such. Indeed the contingency fee agreement was executed before the commencement of probate proceedings in Thurston County, and Tracers does not claim an express contract with decedent. Tracers claims, however, that the discovery of estate assets in Washington was a service necessary for the preservation of the Eric Hard estate giving rise to a claim against the estate.
To support its claim on the merits against the administratrix of the Eric Hard estate, Tracers relies on Wilder Grain Co. v. Felker, 296 Mass. 177, 5 N.E.2d 207, 108 A.L.R. 385 (1936) and Tucker v. Whaley, 11 R.I. 543 (1877), which we find distinguishable on their facts. These cases involve claims against an estate for cattle feed needed *146 to prevent the loss of the cattle furnished between the dates of the death of their owner and the appointment of the administrator for the owner's estate. Thus, in Wilder the seller, after decedent's death and before the appointment of an administrator of decedent's estate, furnished the decedent's cattle with feed needed to prevent their loss. The court recognized the administrator, in his capacity as such, could be held liable on quasi contractual principles
only where the need is immediate, absolute and imperative in order to preserve the estate itself and where that need would otherwise remain unsatisfied. Nothing less will justify the intervention of a stranger thus to impose a charge upon the estate outside the regular course of administration. Merely that the service performed was desirable or in some degree beneficial to the estate is not enough.
Wilder Grain Co. v. Felker, supra at 180.
The issue in Tucker was whether credit was extended to the individual ordering the feed prior to his appointment as administrator, or extended to the estate by operation of the doctrine of the relation back.
In the instant case, neither the services Tracers rendered to the estate as such nor its value are shown. If Tracers seeks recovery because it informed the administratrix of the existence of the assets in Washington prior to her appointment as administratrix, it was a service performed in fulfillment of its contingency fee agreement with the four heirs on whose sole credit Tracers relied.
Tracers appears to claim compensation from the estate in addition to compensation from the four heirs under the contingency fee agreement. Whether it makes such claim or claims compensation from the estate in lieu of compensation from the four heirs does not affect the result we reach. If the latter correctly states its position, the administratrix' duty is to defend against such claim if the estate is not liable. If the former is her claim, then Tracers in effect seeks what amounts to a double recovery for services it rendered for the four heirs. In neither case is recovery permissible.
*147 [3] The Wilder rationale does not apply so as to impose liability on the estate. This is not a case in which the need for the services, whatever they were, were shown to be "immediate, absolute and imperative" in order to preserve the estate and "where the need would otherwise remain unsatisfied." There was no danger of immediate loss of the estate assets requiring emergent activities prior to the commencement of probate proceedings. The administratrix already had the knowledge of the location of the assets when she instituted probate proceedings. She had lawfully acquired that knowledge from Tracers for a proposed fee in ample time to obtain those assets and was duty bound by her fiduciary obligation as administratrix to use that knowledge. The agreement placed no restriction upon that use. She did obtain those assets.
[4] Moreover, Tracers' theory of liability against the estate is untimely raised. It was not raised below when evidence might have been produced on the issue. It is raised for the first time on appeal. Under these circumstances, the court would not reverse on this issue. Matthias v. Lehn & Fink Prods. Corp., 70 Wn.2d 541, 424 P.2d 284 (1967).
Nor is Tracers entitled to recover a fee additional to that to which it is entitled under its agreement without violating its implied provisions. The heirs had a right to believe Tracers would perform its agreement in good faith; that good faith would preclude Tracers from directly or indirectly charging more than the compensation stipulated in the agreement; that a charge to the estate additional to the charge to the heirs would or could indirectly increase the amount of the fee Tracers had agreed upon in the agreement. If Tracers intended to charge an additional fee in any probate proceedings it could reasonably contemplate would occur subsequently in the course of performing the agreement, the agreement should have so provided.
[5, 6] The final and principal question is whether RCW 63.28.330, the text of which is set out in footnote 1, deprives Tracers of property without due process of law. This question is also raised on appeal for the first time. No *148 evidence was introduced below on the question of constitutionality. Tracers, to succeed, must do so on the face of the statute without the benefit of any evidentiary showing. It contends the statute is arbitrary and capricious on its face and that there is no rational relationship between the statute and any lawful state purpose.
A statute is presumed constitutional unless the challenging party proves unconstitutionality beyond a reasonable doubt. In re Harbert, 85 Wn.2d 719, 538 P.2d 1212 (1975); Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, 83 Wn.2d 523, 520 P.2d 162 (1974). For all we know from the face of the statute, the legislature might well have believed the practice prohibited was the evil of extortionate charges. The statute was carefully confined to apply only in cases of fees for locating or purporting to locate property "which he knows has been reported or paid or delivered to the department of revenue pursuant to this chapter". RCW 63.28.330. There is no showing the evil of extortionate charges did not exist. Such an evil may reasonably be conceived to have existed. See Brewer v. Copeland, 86 Wn.2d 58, 542 P.2d 445 (1975).
Tracers concedes that the State may, in the proper exercise of its police power, fix maximum rates or prices for services rendered. Nebbia v. New York, 291 U.S. 502, 78 L.Ed. 940, 54 S.Ct. 505, 89 A.L.R. 1469 (1934); Petstel, Inc. v. King County, 77 Wn.2d 144, 459 P.2d 937 (1969) (regulating maximum prices for services of an employment agency). See Sparkman & McLean Co. v. Govan Inv. Trust, 78 Wn.2d 584, 478 P.2d 232 (1970) (fixing a maximum rate of interest); Permian Basin Area Rate Cases, 390 U.S. 747, 20 L.Ed.2d 312, 88 S.Ct. 1344 (1968).
Tracers also claims it cannot afford to remain in business on the basis of a 5 percent maximum service charge. This claim is not supported by any evidence. We cannot take judicial notice that the maximum service charge is too low to permit Tracers' business to survive. We, therefore, do not reach the question whether the claimed destruction of *149 Tracers' business by application of the statute would render the statute unconstitutional.
Affirmed.
WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.
NOTES
[1] RCW 63.28.330 provides in full as follows:

"It shall be unlawful for any person to seek or receive from any person or contract with any person for any fee or compensation for locating or purporting to locate any property which he knows has been reported or paid or delivered to the department of revenue pursuant to this chapter, in excess of five percent of the value thereof returned to such owner. Any person violating this section shall be guilty of a misdemeanor and shall be fined not less than the amount of the fee or charge he has sought or received or contracted for, and not more than ten times such amount, or imprisoned for not more than thirty days, or both."