IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

BARRY NICHOLAS ANGASAN,

Appellant.

No. 76938-3-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 10, 2018

CHUN, J. — Barry Angasan appeals his conviction for vehicular homicide. Angasan and Jeffrey Thomas were both injured in a motor vehicle accident. Thomas died as a result of his injuries. At trial, the jury essentially considered a single disputed issue: whether Angasan drove the vehicle at the time of the accident. Angasan claimed Thomas drove.

Over objection, the trial court admitted a medical examiner's autopsy report referring to Thomas as the "[u]nrestrained, ejected passenger" and the "unrestrained passenger." In a section titled, "CAUSE OF DEATH," the autopsy report stated, "Contributory element: Alcohol use by the at fault driver." In a section titled, "OPINION," the autopsy report stated, "Alcohol usage by the at fault driver is considered a contributory element." These statements constituted impermissible opinion evidence on Angasan's guilt. As the State has not met its burden to establish harmlessness of the error beyond a reasonable doubt, we reverse and remand for a new trial.

I.
## BACKGROUND

On May 1, 2015, Angasan left his motel room to get food. Angasan took the car of his long-time girlfriend, Janet Buchanan. As Angasan left the motel, he saw Thomas walking. Angasan asked Thomas if he needed a ride and Thomas accepted. Angasan did not know Thomas prior to seeing him that day. Angasan drove him to the house of Thomas's sister, Lisa Gardner-Thomas, to pick up a bicycle.

Around noon, Angasan and Thomas arrived at Gardner-Thomas's house. Thomas offered Gardner-Thomas vodka but she declined. Gardner-Thomas noticed Thomas smelled like "leftover beer." After Thomas picked up the bicycle, he got into the passenger side of the vehicle. Angasan and Thomas then left the house and headed toward South Skagit Highway.

The same day, while driving on South Skagit Highway, Amanda Hertel came upon the scene of an accident. Hertel saw a car stopped sideways in the middle of the road and alcohol bottles scattered around the accident.

People found both Angasan and Thomas lying off to the side of the road. They were unconscious, but breathing. Angasan attempted to get up and move around. Hertel told Angasan not to move and that dispatch had sent an ambulance. Angasan yelled at her not to call "the cops." Angasan then got up and started coughing and vomiting blood before he fell back down. Hertel asked Angasan three times if anyone else had been in the car, and each time he said he was alone. Hertel noticed a strong alcohol odor on Angasan.

Another witness, Frederick Freeman, came upon the scene and attempted to help Angasan. Freeman asked Angasan if he was the driver and Angasan answered yes. Freeman, however, later overheard Angasan tell emergency medical technicians (EMTs) that he had not been driving. Freeman did not notice any odors coming from Angasan.

Harry Jay Follman, an EMT, arrived and aided Angasan. Follman first had to calm Angasan down, as he had several "emotional outbursts and swings." Follman asked Angasan if he was driving when the accident occurred. Angasan muttered an unintelligible response. Follman then told Angasan, "[L]ook, you know, we're out here on the side of the road, I'm trying to figure out what happened to you so I can give you the best possible care, were you the driver of the car?" Angasan replied, "Yeah."

Another civilian at the scene, Paul Crowell, tried to assist Follman in aiding Angasan. Crowell reported he heard Angasan say he was not the driver, but also that Angasan "seemed confused."

EMTs transported Angasan and Thomas to Skagit Valley Hospital. Tyler Dalton, a registered nurse, provided care to Angasan. Angasan told Nurse Dalton that "he was the unbelted driver." During this time, Angasan faded in and out of consciousness.

Dr. Michael Erie, at the time a general surgeon at Skagit Valley Hospital, treated Angasan's head injury. Angasan "was somewhat belligerent and . . . could not remember events surrounding the accident." Dr. Erie relied on a blood

draw and computed tomography (CT) scan for his diagnosis. The CT did not show evidence of a structural injury.

Thomas died at the hospital the same day as the accident, May 1, 2015. Dr. Gary Goldfogel, the Whatcom County Medical Examiner, performed an autopsy on Thomas on May 4, 2015, and prepared a report. When creating reports, Dr. Goldfogel "start[s] with law enforcement, medical reports if they're relevant to the case, [his] external examination, internal examination, [and] biopsy examination." On the first page of the report, Dr. Goldfogel referred to Thomas as the "[u]nrestrained, ejected passenger," and described him as the "unrestrained passenger" on the second and third pages. In the "CAUSE OF DEATH" section, the autopsy report stated, "Contributory element: Alcohol use by the at fault driver." In a section titled, "OPINION," the autopsy report stated, "Alcohol usage by the at fault driver is considered a contributory element."

On May 6, 2015, the State charged Angasan with vehicular homicide.[1]

Between May 7 and May 12, 2015, Angasan made several recorded telephone calls to Buchanan from jail. In the telephone calls, Buchanan recommended Angasan write an apology letter to Thomas's family and do everything he could to show remorse. Angasan replied, "Yeah." Buchanan also told Angasan he must feel awful and he responded, "I do." In other

---

[1] The State alleged all three alternatives of vehicular homicide. Under RCW 46.61.520, a prosecutor may prove vehicular homicide by demonstrating a driver operated a motor vehicle (1) while under the influence of intoxicating liquor or any drug, (2) in a reckless manner, or (3) with disregard for the safety of others, which proximately caused a person's death.

conversations, Angasan claimed the accident happened because he saw a deer and said, "I can't believe I did that either. I really messed up, didn't I?"

At trial, Angasan asserted he was not driving at the time of the accident. Defense counsel objected to the admission of Dr. Goldfogel's autopsy report. The court overruled the objection.

The State then called Trooper Charles Sletten, a detective with the Washington State Patrol. Trooper Sletten never personally visited the scene of the accident, but a sergeant and two other detectives kept him apprised of the investigation after they processed the scene. Trooper Sletten testified, "I think there's enough other parts of this investigation that I felt comfortable without having to have a medical analysis to say, yes, someone was here or there in the vehicle, to say that Mr. Angasan was driving the vehicle."

Angasan called a neurology expert, Dr. Rodney Johnson, to testify he suffered a grade 3 concussion. Dr. Johnson stated such a concussion would cause problems such as confusion and memory impairment for at least several days and often weeks. He further opined that "[i]ndividuals with [Angasan's] level of head injury would really not give reliable answers to a host of questions."

Angasan testified in his defense. According to his testimony: Angasan did not remember many parts of the day of the accident. He drove the car when he and Thomas left Gardner-Thomas's house. However, after Thomas repeatedly offered Angasan alcohol, Angasan pulled over and let Thomas drive so he could have a drink. Angasan remembered waking up in the hospital but

had barely any memory of his stay. Additionally, Angasan did not remember the majority of his May 2015 phone calls with Buchanan.

In closing argument, defense counsel argued Angasan's head injury should lead the jury should find the inculpatory statements unreliable. She pointed to Dr. Johnson's testimony that Angasan's injury caused confusion and memory loss. However, she argued, Angasan eventually recalled Thomas was driving at the time of the collision.

The jury found Angasan guilty of vehicular homicide.[2]

Angasan appeals.

## II.
## ANALYSIS

Angasan argues the trial court erred by admitting the medical examiner's autopsy report because it contained an impermissible opinion on guilt and constituted hearsay. The State addresses Angasan's hearsay objection but does not discuss whether the report improperly conveyed opinion evidence to the jury, and argues that any error in admitting the report was harmless as cumulative. We determine the trial court erred by admitting the report because it contained impermissible opinion evidence.

Appellate courts review a trial court's decision to admit expert testimony for an abuse of discretion. State v. Kirkman, 159 Wn.2d. 918, 927, 155 P.3d 125 (2007). "An abuse of discretion exists '[w]hen a trial court's exercise of its discretion is manifestly unreasonable or based on untenable grounds or

---

[2] The jury found Angasan guilty under the first alternative (while under the influence of intoxicating liquor or any drug).

6

reasons.'" State v. Quaale, 182 Wn.2d 191, 197, 340 P.3d 213 (2014) (citing State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997)).

Witnesses typically may not directly or indirectly testify in the form of an opinion as to the guilt or credibility of a defendant. Kirkman, 159 Wn.2d at 927; Quaale, 182 Wn.2d at 199. "Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury." Kirkman, 159 Wn.2d at 927. Courts, however, will not exclude expert testimony just because it covers an issue the jury must decide. Kirkman, 159 Wn.2d at 929.

To determine whether a statement constitutes impermissible opinion testimony, courts consider "'(1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.'" Kirkman, 159 Wn.2d at 928 (citing Demery, 144 Wn.2d at 759 (internal quotations and citation omitted)). Testimony on the defendant's guilt, however, is "clearly inappropriate for opinion testimony in criminal trials." Quaale, 182 Wn.2d at 200. Courts use these same standards for excluding evidence, such as reports, that inadmissibly opine on guilt. See State v. Demery, 144 Wn.2d 753, 760–61, 30 P.3d 1278 (2001).

Here, the autopsy report identified Thomas as the unrestrained passenger in the vehicle. This statement provided a conclusive opinion about the only disputed element: whether Angasan had been driving. See Quaale, 182 Wn.2d at 200. Additionally, the report described Thomas as the passenger and stated the at-fault driver was intoxicated. Because Thomas and Angasan were the only

7

people in the car, these comments indicated Angasan was the at-fault, intoxicated driver. As a result, the autopsy report provided an opinion on Angasan's guilt and invaded the province of the jury.

Furthermore, Dr. Goldfogel's opinion on who had been driving was couched within his expert testimony at trial. On cross-examination, Dr. Goldfogel admitted that the determinations came from other reports and that he had no independent knowledge of who was driving the car. However, he also testified that, based on his review of the crash scene reports, he believed it is "much less likely" that Thomas had been driving. The testimony therefore further indicated Dr. Goldfogel believed Angasan was the intoxicated "at fault driver" referenced in the report.

The State argues the admission of the autopsy report constituted harmless error because it provided only cumulative evidence.[3] Improper opinion testimony violates a defendant's constitutional right to have the jury decide facts critical to his or her guilt. Quaale, 182 Wn.2d at 201–02. "Constitutional error is harmless only if the State establishes beyond a reasonable doubt that any reasonable jury would have reached the same result absent the error." Quaale, 182 Wn.2d at 202.

_____

[3] On appeal, Angasan challenged the admissibility of his statement to Nurse Dalton that he was the "unbelted driver" on privilege grounds. Because we conclude that, even assuming the court properly admitted the statement to Nurse Dalton, the error in admitting the autopsy report was not harmless, we do not address Angasan's argument.

8

Trooper Sletten testified that he "felt comfortable" saying that Angasan had been driving but did not respond to the scene and relied on information provided by other detectives and a sergeant in his investigative unit. The other testifying witnesses could only repeat conflicting statements Angasan had made as to whether he had been driving. The court also admitted the recording of his calls with Buchanan. Yet at trial, Angasan testified that he did not remember the inculpatory statements and that he had not been driving when the accident occurred. An expert testified Angasan's statements were unreliable because he suffered a serious concussion in the accident that could have caused confusion and memory loss for weeks.

Moreover, the statements in the report indicating Angasan had been driving while intoxicated were more significant because it came from a government official. See State v. Thompson, 90 Wn. App. 41, 46, 950 P.2d 977 (1998) ("an opinion as to the defendant's guilt is particularly prejudicial when it is expressed by a government official"). Additionally, the State called Dr. Goldfogel as an expert. During his expert testimony and in his expert report, Dr. Goldfogel stated Thomas was the passenger, casting "an aura of scientific certainty" over his opinion, and "significantly increasing the weight the jury likely attached to it." Quaale, 182 Wn.2d at 202.

Angasan's defense focused on his assertion he was not driving. Witnesses presented conflicting evidence on the issue. The State has not met its

burden to demonstrate, beyond a reasonable doubt, that a reasonable jury would have reached the same result absent the error.[4]

We reverse and remand for a new trial.

_Chun, J._

WE CONCUR:

_Mann, J._                    _Appelwick, C.J._

---

[4] Because we find this error warrants reversal, we do not address Angasan's claims of ineffective assistance of counsel, error as to admission of two blood tests, cumulative error, or improper sentencing.