IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36738-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARK AARON MOEN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Mark Moen appeals after a jury found him guilty of two counts of first degree child molestation and one count of unlawful imprisonment with sexual motivation. He argues he received ineffective assistance of counsel when his trial counsel failed to challenge the victim's competency to testify and failed to object and move to strike improper vouching and opinion testimony. We disagree and affirm his convictions.

FACTS

Danielle Nesbitt has three children—M.A.[1] and her two older brothers. During the fall of 2016, Ms. Nesbitt's stepfather, Mark Moen, watched her three children from when school let out until she came home from work. On December 28, 2016, Ms. Nesbitt was talking with M.A., who was about seven years old. M.A. talked about her close bond with the family's new puppy. M.A. said the puppy follows her everywhere, except when Grandpa Mark closes her bedroom door and they play Barbies.

Ms. Nesbitt asked how she and her grandpa play with the Barbies. M.A. said the Barbies kiss and have sex. Ms. Nesbitt asked if anything else happens. M.A. became nervous and curled up a bit. M.A. then said Grandpa Mark touches her.

Ms. Nesbitt began asking pointed questions. She asked if Grandpa Mark put his fingers inside her. M.A. said "yes." Report of Proceedings (RP) at 441. M.A. also told her mother that Grandpa Mark would put it in her butt and it hurt. M.A. stated that this would happen in the bedroom. After hearing this, Ms. Nesbitt contacted law enforcement.

---

[1] To protect the privacy interests of M.A., we identify her only through the use of initials. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov /appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

On January 4, 2017, pediatric nurse practitioner Fiona Dennison physically examined M.A. The physical examination was normal. During the exam, M.A. told Ms. Dennison "'Grandpa put his finger in my private'" and "'Grandpa put his private halfway in my butt.'" RP at 542. M.A. explained it was the front and back private, but his fingers only went in her private in the front. M.A. said when her grandpa's private was halfway in her private it hurt, but there was no bleeding.

On January 10, 2017, child interview specialist Tatiana Williams conducted a recorded interview with M.A. M.A. told Ms. Williams that Moen was "doing bad stuff to me like, um, putting his finger in my privates . . . and putting his privates in my other private." State's Ex. 1, at 17 min., 17 sec. through 17 min., 34 sec. M.A. said it happened more than one time. M.A. recalled that Moen untied his sweatpants and put it in her butt, but she could not remember what happened next, only that "it hurt real bad." State's Ex. 1, at 27 min., 8 sec. through 27 min., 58 sec.; 31 min., 19 sec. through 31 min., 29 sec. M.A. also said Moen made her draw pictures with "big breasts," and that the pictures were in her purple and black notebook. State's Ex. 1, at 47 min., 29 sec. through 47 min., 46 sec.; 56 min., 30 sec.

After the interview, Ms. Nesbitt searched M.A.'s bedroom and found the notebook. It contained descriptive drawings of girls with very large breasts.

3

The State charged Moen with two counts of first degree child molestation, two counts of first degree child rape, and one count of unlawful imprisonment with sexual motivation.

On January 11, 2019, the court held a child hearsay hearing. Moen did not contest M.A.'s competency, only the reliability and admissibility of M.A.'s hearsay statements. The court found that M.A. was competent to be a witness, and her statements were consistent and admissible at trial.

The trial court entered the following relevant findings regarding M.A.'s competency: M.A. was nine years old at the time of the hearing. M.A. understood her obligation to tell the truth. M.A.'s mother stressed the importance of telling the truth in their home. M.A. demonstrated clear memories of the time period during which the sexual abuse occurred. M.A. was able to answer and clarify questions. M.A.'s statements to Ms. Dennison about the abuse were made spontaneously and close in time to the events. M.A.'s statements to Ms. Williams were also close in time. Ms. Williams asked open-ended questions and did not introduce terms to M.A. M.A. corrected and clarified statements with Ms. Williams throughout the interview.

Moen proceeded to trial. The jury found Moen guilty of two counts of first degree child molestation and one count of unlawful imprisonment with sexual motivation. The

jury found Moen not guilty of two counts of first degree child rape. The court convicted Moen and sentenced him to 114 months to life.

Moen timely appealed.

## ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Moen contends he received ineffective assistance of counsel in multiple ways. We divide his arguments into two categories: Counsel's failure to challenge M.A.'s competency, and counsel's failure to object to testimony.

### 1. *Failure to challenge M.A.'s competency*

Moen first argues he received ineffective assistance because his trial counsel failed to challenge M.A.'s competency to testify. The State initially argues that Moen cannot raise this argument because defense counsel did not challenge M.A.'s competency and, thus, invited the error. We disagree.

The invited error doctrine prohibits appellate review of an error that the party sets up at trial. *State v. Momah*, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). "The doctrine was designed in part to prevent parties from misleading trial courts and receiving a windfall by doing so." *Id.* However, the invited error doctrine does not apply when a defendant maintains the error occurred as a result of ineffective assistance of counsel.

*See State v. Aho*, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); *State v. Rodriguez*, 121 Wn.

App. 180, 183-84, 87 P.3d 1201 (2004); *State v. Doogan*, 82 Wn. App. 185, 188, 917

P.2d 155 (1996).  We therefore address the merits of Moen's first argument.

To protect a defendant's right to counsel, a defendant has the right to receive

effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct.

2052, 80 L. Ed. 2d 674 (1984).  An allegation of ineffective assistance of counsel is a

mixed question of law and fact that we review de novo.  *Id.* at 698.  To determine whether

counsel provided effective assistance, we apply a two-pronged test: (1) whether counsel's

performance was deficient, and (2) whether that deficient performance prejudiced the

defendant to an extent that changed the result of the trial.  *Id.* at 687.  We can address the

second prong initially "[i]f it is easier to dispose of an ineffectiveness claim on the ground

of lack of sufficient prejudice."  *Id*. at 697.

The State argues Moen cannot establish prejudice.  We agree.  To establish

prejudice, Moen must show defense counsel would have been successful and, if

successful, the outcome of the trial would have been different.  *See State v. Emery*, 174

Wn.2d 741, 755, 278 P.3d 653 (2012); *In re Pers. Restraint of Davis*, 152 Wn.2d 647,

711, 101 P.3d 1 (2004); *State v. Trujillo*, 153 Wn. App. 454, 459-60, 222 P.3d 129

6

(2009). As explained below, had defense counsel contested M.A.'s competency, he would not have been successful in doing so.

Competency is a low bar; all persons, including children, are presumed competent. RCW 5.60.020; *State v. Brousseau*, 172 Wn.2d 331, 347, 259 P.3d 209 (2011). A young child is competent to testify as a witness if that child has

> "(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*In re Dependency of A.E.P.*, 135 Wn.2d 208, 223, 956 P.2d 297 (1998) (quoting *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967)).

Moen argues that M.A. did not demonstrate she understood her obligation to tell the truth. We disagree. The trial court found that M.A. knew the difference between a truth and a lie, and her mother stressed the importance of telling the truth.[2] Had defense counsel contested the first competency element, the trial court would have found against Moen.

---

[2] Moen has not assigned error to any of the trial court's competency findings. We accept the findings as true. *In re Interest Mahaney*, 146 Wn.2d 878, 895, 51 P.3d 776 (2002).

Moen next contends that M.A. did not demonstrate an ability "to accurately relate events contemporaneous to the alleged abuse." Appellant's Br. at 31. Moen complains that Ms. Williams did not establish in the recorded interview that M.A. could recall events even the day prior to the interview. Accurately relating contemporaneous events is not one of the five requirements for establishing child competency. To the extent Moen is arguing that memory is a necessary component of competency, his argument fails. The trial court found that M.A.'s statements to Ms. Nesbitt, Ms. Williams, and Ms. Dennison were made close in time to the events and were consistent. The fact that M.A. made consistent statements to three adults near the time of the events shows M.A. had a good memory. Had defense counsel challenged M.A.'s memory, the trial court would have found against Moen. Moen fails to show prejudice because had he challenged M.A.'s competency, the trial court would have found her competent to testify.

### 2. *Failure to object to testimony*

Moen next contends he received ineffective assistance of counsel because his trial counsel failed to object when Ms. Nesbitt and Ms. Williams vouched for M.A.'s credibility or when Ms. Williams provided improper opinions.

8

*Ms. Nesbitt*

During trial, the State asked Ms. Nesbitt how she felt after hearing M.A. disclose the sexual abuse to her. Moen objected, and the trial court overruled it. The State nevertheless rephrased its question, and asked Ms. Nesbitt how she responded to M.A. Ms. Nesbitt testified, "I mean, obviously I told her I believed her and I—I let her know it was going to be okay." RP at 443. Moen did not object after this statement.

Declaring the victim to be telling the truth in essence is an opinion that the defendant is guilty. Opinions on guilt are improper whether made directly or by inference. *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014). Courts consider five factors when determining whether such testimony constitutes improper vouching: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) other evidence before the trier of fact. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

We do not think Ms. Nesbitt's reassurance to her nervous daughter qualifies as vouching, much less improper vouching. Nor do we think Moen was prejudiced by defense counsel's failure to object. The jury did not return a guilty verdict because Ms. Nesbitt reassured her nervous daughter that she believed her. The jury returned a guilty

verdict because it found M.A. credible, and her statements to her mother, Ms. Williams, and Ms. Dennison were specific and consistent.

*Ms. Williams*

The State asked Ms. Williams a series of questions about how child memory is affected by the passage of time, traumatic events, and testifying in court in front of several people. Ms. Williams conceded she was not an expert in such things, but answered that these factors could explain problems in a child's testimony.

Moen argues the questions did not require an expert opinion, and Ms. Williams's opinions were lay opinions by an expert and likely were given significant weight by the jury. Given that Ms. Williams told the jury she was not an expert in this area, we would have to speculate whether the jury gave her opinions much weight. Moen's argument requires us to speculate whether his trial counsel's failure to object resulted in prejudice. It is just as likely the jurors reached their own independent opinions on these matters, given that these opinions were within their general knowledge.

The State also asked Ms. Williams if anything M.A. said made her believe M.A. was being coached. Ms. Williams's answer drew a long response. She reviewed various detailed answers given by M.A., and then said, "[T]hose type of things you wouldn't find

10

coming from a child if it hadn't really been experienced." RP at 623. Moen objected, and the trial court sustained the objection.

Before closing arguments and with the jury absent, defense counsel told the court he should have objected earlier to Ms. Williams's answer. Defense counsel also asked the court to instruct the prosecutor to refrain from arguing another witness statement that he had objected to and the trial court had sustained. This other statement came from the child interviewer, who testified that the explicit pictures drawn by M.A. could only have been drawn from someone who had experienced something similar to what M.A. alleged. The court instructed the prosecutor not to draw the jury's attention to either statement because it had sustained both objections. The prosecutor agreed and did not discuss those statements in her closing.

Moen argues he received ineffective assistance of counsel because defense counsel failed to ask the court to strike both of those improper statements. Moen argues, unless the improper statements were struck by the court, the jury was entitled to consider them. Given the court's explicit instructions to the jury, we disagree.

The court instructed the jury just before closing arguments. The first instruction the court read to the jury stated in part: "If I have ruled that any evidence is inadmissible . . . then you must not discuss that evidence during your deliberations or consider it in

11

No. 36738-0-III
*State v. Moen*

reaching your verdict." Clerk's Papers at 125. We presume the jury followed the court's instruction and did not consider either improper statement. *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). Presuming the jury did not consider either improper statement, we conclude that defense counsel's failure to request that the answers be struck did not prejudice Moen.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Korsmo, A.C.J.

Fearing, J.

12