# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50497-9-II |
| Respondent, | |
| v. | |
| RICHARD J. HARDY, | UNPUBLISHED OPINION |
| Appellant. | |

Lee, J. — Richard J. Hardy appeals his jury conviction for four counts of first degree child rape involving his former girlfriend's daughter E.E.[1] Hardy argues that (1) he was denied his constitutional right to venue because one of the counts occurred in King County, not Pierce County, (2) the evidence was insufficient to support separate and distinct acts of sexual abuse, and (3) the trial court abused its discretion in admitting E.E.'s testimony regarding Hardy's prior acts of domestic violence against her and her mother.

In a statement of additional grounds, Hardy asks us to review whether (1) the trial court violated his constitutional right to a fair and impartial jury, (2) the State engaged in prosecutorial misconduct by appealing to the passions and prejudice of the jury, (3) his counsel was ineffective for failing to object to the State's questioning and closing argument, (4) he was prejudiced by the

---

[1] Pursuant to this court's General Order 2011-1, this court uses initials for child witnesses in sex crimes.

cumulative errors at trial, and (5) his offender score should have been zero because his four convictions were for the same criminal conduct.

We affirm.

## FACTS

A.    THE ABUSE

E.E. was born in 1996. Her parents, Melissa and James,[2] divorced approximately three and a half years later. Following the divorce, E.E. lived with Melissa and visited James every other weekend.

When E.E. was four and a half years old, Melissa began dating Hardy. One month later, Hardy moved into the apartment Melissa shared with E.E. E.E. lived with Melissa and Hardy for the next four years in several apartments in Pierce County and in one apartment in King County.

One night, when E.E. was six years old, Hardy entered E.E.'s bedroom, ripped a hole in her underwear, and touched her vagina with his fingers. Hardy regularly touched E.E. in this manner for the next six years. Approximately three to four times per month, Hardy entered E.E.'s bedroom as she slept, paced around her bedroom, stood at the edge of her bed, and removed her covers. He then ripped a hole in her underwear and touched her vaginal area with his fingers. On seven or eight separate occasions, Hardy also inserted his finger into E.E.'s vagina. All of these incidents occurred in Pierce County.

---

[2] We refer to E.E.'s parents and stepmother by their first names to protect E.E.'s privacy. We intend no disrespect.

On one occasion, when E.E. was seven and a half years old, Hardy watched E.E. while her mother was at work. Hardy played a game with E.E. in which he blindfolded her, put different flavors of food into her mouth, and asked her to guess what the flavors were. After first placing cough syrup into E.E.'s mouth, Hardy then inserted his penis into E.E.'s mouth and moved it around. E.E. recognized Hardy's penis by its smell and texture. This incident occurred in King County.

B.      THE DISCLOSURES

E.E. first told Melissa about Hardy's abuse when she was seven years old. Melissa responded by telling E.E. that she was "f***ing lying." 5 Verbatim Report of Proceedings (VRP) (Feb. 28, 2017) at 635. E.E. attempted to discuss the abuse with Melissa multiple times between the ages of 14 and 18. These attempts always led to an argument between E.E. and Melissa. Melissa never contacted law enforcement about E.E.'s allegations.

When E.E. was 18 years old, she told her sister-in-law that Hardy had molested her. E.E.'s sister-in-law responded by saying that she was sad for E.E., but she did not contact law enforcement. Approximately a month later, E.E. told her stepmother Jessica that Hardy had molested her. Jessica notified James, and the next day, Jessica and James brought E.E. to the police station to file a police report.

The State charged Hardy with four counts of first degree rape of a child[3] committed between December 12, 2002 and December 11, 2008. The State also alleged an aggravating circumstance on each count that Hardy used his position of trust, confidence, or fiduciary responsibility in the commission of the crimes.[4] The State's declaration for determination of probable cause supporting the charges stated that the oral sex incident occurred in King County.

C. RELEVANT PORTIONS OF TRIAL

1. Jury Selection

As part of jury selection, the trial court instructed the jury venire to answer a series of questions in a written juror questionnaire. The individual responses to the questionnaire were sealed. In the course of assessing the juror responses, the trial court observed that one of the potential jurors failed to fill out one of the pages of the questionnaire. As a result, the trial court allowed the parties to ask the juror the questions he or she forgot to answer outside the presence of the entire jury venire. One of the questions was whether the juror knew the trial court judge, her judicial assistant, the court reporter, the deputy prosecuting attorneys, or the defense attorney. Another question listed all potential witnesses in the case and asked the juror to indicate whether he or she recognized any of them.

---

[3] "A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." RCW 9A.44.073(1). Sexual intercourse "occurs upon any penetration, however slight." RCW 9A.44.010(1)(a).

[4] Under RCW 9.94A.535(3)(n), the jury may consider as an aggravating circumstance whether the "defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense."

After the jury was selected and empaneled, the trial court instructed the jury that "[i]t's essential to a fair trial that everything you learn about the case comes to you in this courtroom and only in this courtroom." 3 VRP (Feb. 23, 2017) at 431. The court further instructed, "You must keep your mind free of outside influences so that your decision will be based entirely on the evidence presented during the trial and on my instructions to you about the law." 3 VRP (Feb. 23, 2017) at 431.

2.      Venue Issue

After the jury was empaneled, the trial court addressed the State's motion to admit evidence of Hardy's 1993 child rape conviction. The State argued that the circumstances of that crime were very similar to that involving E.E., and therefore, the 1993 conviction should be admitted under ER 404(b) to show common scheme or plan. In response, Hardy argued that the circumstances involving E.E. were markedly different than the 1993 case and could not be admitted as evidence of a common scheme or plan. Hardy also remarked:

> She—it's alleged she was asleep in her room, and she repeated this over and over. This is how it happened every single time other than one incident in Federal Way.
>
> We don't have to deal with that. Because of venue issues, that can't be the subject of conviction in this case. We're going to have to get some kind of an instruction to limit that, but it can be admitted for—with the Court's call—under State v. Ferguson, lustful disposition.
>
> So, I mean, the acts can come in in this case, but it can't be the basis of a conviction because it's a—venue. We don't have venue here. And we're not stipulating to venue. It's a King County act. If King County wants to bring it up, that's their business. It can't be the basis of a conviction here. It's venue.

4 VRP (Feb. 27, 2017) at 474.

In response, the State argued "this is the first time I've ever heard a venue argument raised here on the fifth—fourth or fifth day of trial, after we've already picked a jury and jeopardy has attached. This is the first time I've heard defense raise any sort of claim about venue." 4 VRP (Feb. 27, 2017) at 487. The State further argued that any objection to venue at this point was untimely because the State had been clear in discovery and in its trial briefing that it would be relying on the King County oral sex incident as the basis of one of the charges.

The trial court denied the State's motion to admit evidence of Hardy's 1993 child rape conviction, ruling that there were not substantial similarities between the 1993 case and the case involving E.E. The trial court did not address Hardy's earlier remarks regarding venue.

Hardy never filed a motion to challenge venue. Instead, after both parties rested their case in chief, Hardy told the trial court:

> And then I've got a—you know, I've got that dilemma with the King County incident.
>
> . . . .
>
> . . . I got to figure out an instruction to deal with it. You know, I couldn't bring a venue motion because there's so many alleged acts here that occurred in Pierce County, and under the *Petrich* instruction, they only need one act per case. So I couldn't say, "Well, Judge, you know, I'm going to bring a motion"—I knew this when this case started. I want count one moved or dismissed because of venue because I can't. Yet we have an act in King County that isn't in proper venue that the jury might rely on to convict on one of these counts. I got to deal with it.

6 VRP (Mar. 1, 2017) at 863-64.

Hardy later informed the trial court, "I am not bringing a venue motion. I'm not asking that it be dismissed for venue. I never thought it could be." 6 VRP (Mar. 1, 2017) at 866. Hardy also stated, "I had never intended to bring a venue motion, but I have this problem with this King

County thing floating around out there not knowing if the jury is going to rely on it or not. So I wanted to propose at least an instruction to deal with it." 6 VRP (Mar. 1, 2017) at 866. Hardy never proposed such instruction.

      3.     Trial Testimony

At trial, E.E. testified to the facts discussed above. E.E. also testified that Hardy regularly touched her in this manner between December 12, 2002 and December 11, 2008, and that the contact ended just before she turned 12 years old. E.E. also recalled that during the incidents, Hardy kept the lights off in her bedroom, touched her with one hand, and did not speak to her during or after.

During direct examination, the State questioned E.E. as to why she never told anyone about the Federal Way incident. E.E. responded that she was scared. Outside the presence of the jury, the State asked E.E. why she was scared of Hardy. E.E. explained that she had witnessed Hardy physically abuse Melissa, threaten to kill Melissa, and once held a knife to Melissa's throat. E.E. also testified that Hardy began hitting her with the metal parts of his belt at the age of five, which sometimes left welts on her back.

Hardy objected to this testimony under ER 404(b) and ER 403, arguing that the testimony regarding Hardy's physical abuse of E.E. and Melissa was highly prejudicial. He also argued that the State could not offer such testimony unless Hardy first made an issue of E.E.'s delayed disclosure. The State argued that E.E.'s testimony regarding Hardy's physical abuse was admissible to explain why E.E. was afraid of Hardy. This fear was relevant in that it explained E.E.'s reluctance to report Hardy's sexual abuse of her.

Before ruling on Hardy's objection, the trial court reviewed the transcript of the opening statements. During opening statement, Hardy told the jury that they would learn throughout the case why E.E. targeted Hardy with false allegations "and why they arose at the time that they did." 4 VRP (Feb. 27, 2017) at 530-31. Hardy continued, "The evidence will show, though, as [E.E.]'s old enough now to understand what it takes to get him out of the picture, to get what she wants, get him out of the way, and executed a plan to do just that." 4 VRP (Feb. 27, 2017) at 531. After reviewing the transcript of the opening statements, the trial court ruled that Hardy had raised the issue of E.E.'s delay in reporting the sexual abuse, and therefore, the testimony was admissible.[5]

4.      Jury Instruction and Verdict

The trial court included a unanimity instruction in the jury instructions. Instruction 23 instructed the jury that to convict Hardy on counts I, II, and III, which were based on the recurring sexual abuse of E.E. in Pierce County, "one particular act of Rape of a Child in the First Degree must be proved beyond a reasonable doubt for each count, and you must unanimously agree as to which act has been proved." Clerk's Papers (CP) at 171. Instruction 17 instructed the jury that count IV was based on "a time separate and distinct from Counts I, II, or III." CP at 165. Instruction 24 instructed the jury that regarding Count IV, "the State relies upon evidence regarding a single act constituting the alleged crime" and that to convict, the jury needed to unanimously agree "that this specific act was proved." CP at 172. In closing, the State argued that count IV was based on the King County oral sex incident. Hardy did not object to Instruction 17 or 24.

---

[5] The trial court also gave the jury a limiting instruction for this evidence.

The jury found Hardy guilty as charged. Hardy appeals.

ANALYSIS

A.    VENUE

Hardy argues that his conviction based on the oral sex incident with E.E. violated his rights under article I, section 22 of the Washington State Constitution because that incident occurred in King County. He also contends that the trial court abused its discretion by "failing to act when necessary to protect Hardy's constitutional right to venue." Br. of Appellant at 16. We disagree.

1.    Standard of Review

We review a trial court's ruling on a motion to change venue for an abuse of discretion. *State v. Stearman*, 187 Wn. App. 257, 264, 348 P.3d 394 (2015). A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable reasons or grounds. *Id.* at 264-265. A trial court also abuses its discretion by failing to exercise its discretion, such as by failing to render a necessary decision. *Id.* at 265.

2.    Hardy Waived his Right to Challenge Venue

Article I, section 22 of the Washington Constitution guarantees criminal defendants the right to a speedy and public trial by an impartial jury "of the county in which the offense is charged to have been committed." CrR 5.1(a) also governs venue decisions and provides that an action shall be commenced either "(1) [i]n the county where the offense was committed;" or "(2) [i]n any county wherein an element of the offense was committed or occurred."

Proper venue is not an element of a charged crime. *State v. Rockl*, 130 Wn. App. 293, 297, 122 P.3d 759 (2005). "Rather, it is a constitutional right that is waived if not asserted in a timely

fashion." *Id.* If there is reasonable doubt whether an offense has been committed in one of two or more counties, then "the action may be commenced in any such county." CrR 5.1(b). In this situation, the defendant has the right to change venue to any other county in which the offense may have been committed. CrR 5.1(c). However, "[a]ny objection to venue must be made as soon after the initial pleading is filed as the defendant has knowledge upon which to make it." CrR 5.1(c).

Absent facts that compel application of CrR 5.1, the defendant must raise a venue challenge at the omnibus hearing. *State v. Dent*, 123 Wn.2d 467, 480, 869 P.2d 392 (1994). "Failure to raise or give notice at the hearing of any error or issue of which the party concerned has knowledge may constitute waiver of such error or issue." CrR 4.5(d). Unless the defendant shows good cause for failing to raise the venue issue at the omnibus hearing, the failure to do so constitutes waiver. *Dent*, 123 Wn.2d at 480.

Here, Hardy never challenged venue by moving to dismiss or by bringing a motion to change venue. Instead, after the jury was empaneled, Hardy commented that the King County oral sex incident could not be the subject of a conviction in this case "[b]ecause of venue issues." 4 VRP (Feb. 27, 2017) at 474. He made this comment while arguing against the State's motion to introduce evidence of his 1993 child rape conviction. Despite this comment, Hardy never sought to change venue for the charge arising from the King County incident.

Not only did Hardy not challenge venue, he explicitly told the trial court that he was "not bringing a venue motion." 6 VRP (Mar. 1, 2017) at 866. He informed the trial court that instead

he might propose a limiting instruction on the issue, but then never proposed such instruction. Thus, Hardy waived his challenge to venue.

Even though Hardy never actually challenged venue, he argues that his conviction on count IV should be dismissed based on "the reasoning and analysis" of our decision in *Stearman*. Br. of Appellant at 16. However, even Hardy acknowledges that *Stearman* is "factually and procedurally distinguishable from this case." Br. of Appellant at 16.

In *Stearman*, we held that the trial court abused its discretion by refusing to consider the defendant's renewed motion to change venue at the close of the State's evidence because the evidence at trial raised a venue issue. 187 Wn. App. at 269. Unlike in *Stearman*, Hardy never made a motion to change venue, nor did he renew a motion to change venue. In fact, he specifically told the trial court that he was "not bringing a venue motion," "not asking that [the case] be dismissed for venue," and that he "never intended to bring a venue motion." 6 VRP (Mar. 1, 2017) at 866. Therefore, it was not manifestly unreasonable for the trial court to not rule on a motion that Hardy never made. We hold that the trial court did not abuse its discretion, and Hardy's challenge to venue fails.[6]

B.      SUFFICIENCY OF THE EVIDENCE—MULTIPLE INCIDENTS

Hardy argues that the State presented insufficient evidence for the jury to convict him on the first three counts of first degree child molestation because E.E.'s generic testimony that formed

---

[6] Hardy also assigns error to the trial court's failure to instruct the jury that it must find by a preponderance of the evidence that the offenses occurred in Pierce County. Because Hardy provides no argument on this assignment of error, we decline to consider it. *See* RAP 10.3(a)(6).

the basis of counts I, II, and III failed to sufficiently describe three distinct acts of first degree child rape. We disagree.

1. Standard of Review

We review a challenge to the sufficiency of the evidence de novo. *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn from that evidence. *Id.* Direct and circumstantial evidence are equally reliable. *State v. Ozuna*, 184 Wn.2d 238, 248, 359 P.3d 739 (2015).

2. E.E.'s Testimony Sufficiently Described Specific and Distinct Acts of Abuse

a. Legal principles

Where the State alleges multiple acts, any one of which could meet the requirements of the charged crime, the State need not elect which specific act the jury must rely on in order to convict. *State v. Hayes*, 81 Wn. App. 425, 430-31, 914 P.2d 788, *review denied*, 130 Wn.2d 1013 (1996). If the State chooses not to elect, the trial court must "instruct the jury that all of them must agree that the same underlying criminal act has been proved beyond a reasonable doubt." *State v. Kitchen*, 110 Wn.2d 403, 411, 756 P.2d 105 (1988). And in cases of sexual abuse where multiple counts are alleged to have occurred within the same charging period, the State's evidence must

clearly delineate specific and distinct acts that occurred during the charging period. *Hayes*, 81 Wn. App. at 431.

We employ a three-prong test to determine whether an alleged victim's generic testimony about a course of sexual abuse sufficiently describes specific and distinct incidents of abuse in order to support a conviction. *State v. Edwards*, 171 Wn. App. 379, 402, 294 P.3d 708 (2012). The alleged victim must: (1) describe the act or acts with sufficient specificity to allow the fact finder to determine which offense, if any, has been committed, (2) describe the number of acts with sufficient certainty to support each of the counts the State alleged, and (3) describe the general time period in which the acts occurred. *Hayes*, 81 Wn. App. at 438. This test balances a defendant's due process rights with a child victim's inability to provide extensive details about recurring instances of sexual abuse. *Id.*

In *Hayes*, the child victim described how the defendant would place himself on top of her in his bedroom and testified that the defendant had " 'put his private part in mine.' " *Id.* The *Hayes* court held that this testimony satisfied the first prong of the test. *Id.* Next, the *Hayes* court held that the victim's testimony that Hayes did this at least " 'four times' " and up to " 'two or three times a week' " satisfied the second prong of the test. *Id.* at 439 And finally, the child's testimony that the incidents occurred during the charging period satisfied the third prong. *Id.*

b. Sufficient evidence presented

Here, because the State chose not to elect which specific acts were associated with counts I, II, and III, the trial court was required to instruct the jury as to unanimity. *Kitchen*, 110 Wn.2d at 411. Jury instruction 23 stated that to convict Hardy on counts I, II, and III, "one particular act

of Rape of a Child in the First Degree must be proved beyond a reasonable doubt for each count, and you must unanimously agree as to which act has been proved." CP at 171. Thus, the trial court properly instructed the jury that they must be unanimous as to what specific act constitutes the count charged.

As to the *Hayes* test, E.E. testified that Hardy first touched her vagina when she was six years old. E.E. described Hardy entering her bedroom as she slept, ripping a hole in her underwear, and then touching her vagina with his fingers. E.E. testified that Hardy regularly touched her in this manner between December 12, 2002 and December 11, 2008, and that the contact ended just before she turned 12 years old. She stated that three to four times per month, Hardy paced around her bedroom, removed her covers, and then ripped a hole in her underwear. On seven or eight separate occasions, Hardy inserted his finger into E.E.'s vagina. E.E. recalled that Hardy kept the lights off in the bedroom, used one hand to touch her, and did not speak to her during or after. E.E.'s testimony was similar in quality to that of *Hayes* and described the acts with sufficient specificity to satisfy the first prong of the *Hayes* test.

E.E. also described the number of acts with sufficient certainty to support each of the alleged accounts. As in *Hayes*, E.E. did not testify to a specific number of incidents, but instead estimated that Hardy inserted his finger into her vagina on seven or eight different occasions. Thus, E.E. described the number of acts with sufficient certainty to support each of the alleged counts, and her testimony satisfied the second prong of the *Hayes* test.

Finally, E.E. testified that the acts occurred between December 12, 2002 and December 11, 2008. The first incident occurred after E.E.'s sixth birthday and the last occurred when she was approximately 12 years old. Thus, E.E. described the general time period in which the abuse occurred, and her testimony satisfied the third prong of the *Hayes* test.

Hardy relies on *Edwards* to argue that E.E.'s testimony failed to describe the number of acts of sexual intercourse with sufficient certainty because "E.E. did not provide any distinguishing facts, such as different actions, locations, or timeframes." Br. of Appellant at 21. However, the *Edwards* court never held that a child victim must provide "distinguishing facts," such as different acts, locations, or timeframes in order to comply with the *Hayes* test. *See* 171 Wn. App. at 403. Instead, the *Edwards* court upheld the trial court's dismissal of one of the child molestation counts because the State failed to offer any evidence "defining the time period in which any other act occurred." *Id.* Thus, the evidence failed to "clearly delineate between specific and distinct incidents of sexual abuse during the charging period." *Id.*

Conversely, here, the State offered evidence that the seven or eight different acts of sexual intercourse occurred between December 12, 2002 and December 11, 2008, when E.E. was between the ages of six and 12 years old. As a result, the evidence clearly delineated between specific and distinct acts of sexual abuse during the charging period and E.E.'s testimony satisfied the third prong of the *Hayes* test.

Viewing this evidence in the light most favorable to the State, any rational trier of fact could have found that Hardy committed three separate acts of first degree child rape between December 12, 2002 and December 11, 2008. Therefore, we hold that E.E.'s testimony sufficiently

described three separate and distinct acts of rape to support Hardy's conviction on counts I, II, and III.

C.    ER 404(b) EVIDENCE

Hardy argues that the trial court abused its discretion in admitting evidence of Hardy's past physical abuse of Melissa and E.E. in order to show why E.E. delayed in reporting the abuse. Hardy contends that this evidence could not be used to explain E.E.'s delay in reporting Hardy's sexual abuse because (1) E.E. told her mother about the sexual abuse months after it occurred, (2) Hardy never raised the issue of delayed disclosure, and (3) this evidence "was not necessary" because E.E. offered other plausible explanations to explain her reporting delay. Br. of Appellant at 24. We disagree.

1.    Standard of Review

We review the trial court's interpretation of ER 404(b) de novo. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). If the trial court correctly interpreted ER 404(b), then we review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *Id.* A trial court abuses its discretion if it admits evidence contrary to law, or when its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Quaale*, 182 Wn.2d 191, 196-97, 340 P.3d 213 (2014).

2.    The Trial Court did not Abuse its Discretion

Evidence of a defendant's prior misconduct is generally not admissible to demonstrate the accused's propensity to commit the crime charged. *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d

937 (2009); ER 404(b). However, ER 404(b) allows for the introduction of evidence of prior misconduct for other purposes, such as showing motive or intent. *Fisher*, 165 Wn.2d at 744.

We read ER 404(b) in conjunction with ER 403, which requires the trial court to exercise its discretion in excluding relevant evidence that would unfairly prejudice the accused. *Id.* at 745. Prior to admitting misconduct evidence, the trial court must (1) find by a preponderance of the evidence that the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence in proving an element of the crime, and (4) weigh the probative value of such evidence against its prejudicial effect. *Id.*

Relying on *Fisher*, Hardy argues that the State could only introduce evidence of Hardy's prior physical abuse if Hardy first made an issue of E.E.'s delayed disclosure. Such argument misunderstands the holding in *Fisher*.

In *Fisher*, the defendant was charged with molesting his stepdaughter. 165 Wn.2d at 733. The trial court allowed the State to introduce ER 404(b) evidence of the defendant's prior physical abuse of his son and stepchildren to explain the victim's delayed reporting. *Id.* at 734. The trial court ruled that the evidence was only admissible if the defense first raised the issue of delayed reporting. *Id.* Our Supreme Court held that the trial court's ruling was proper and concluded that the ruling made sense, as the physical abuse only became relevant if the defense made an issue of the victim's delayed reporting. *Id.* at 746. The *Fisher* court never held that a trial court must condition ER 404(b) evidence on the defense first broaching certain topics at trial, only that it made sense for the trial court to do so in that case.

Also, even if *Fisher* stood for the proposition Hardy claims, Hardy raised the issue of when E.E. disclosed the abuse during opening statement when he told the jury that they would learn throughout trial why E.E.'s false allegations "arose at the time that they did." 4 VRP (Feb. 27, 2017) at 530-31. He further informed the jury, "The evidence will show, though, as [E.E.]'s old enough now to understand what it takes to get him out of the picture, to get what she wants, get him out of the way, and executed a plan to do just that." 4 VRP (Feb. 27, 2017) at 531. Thus, Hardy made the timing of E.E.'s disclosure an issue at trial and it was not manifestly unreasonable for the trial court to allow evidence of Hardy's prior physical abuse in order to show why E.E. feared Hardy and delayed in reporting the ongoing sexual abuse.

Hardy also argues that the trial court abused its discretion because (1) E.E. told her mother about the abuse "just months" after the alleged incident, so there was no delay, and (2) even if there was a delay, E.E. provided several other "plausible explanations" as to why she waited to report the sexual abuse to the police. Br. of Appellant at 22, 24. Contrary to Hardy's assertion, several months still constitutes a time lapse between when an abusive incident occurred and when the child actually reported the abuse. And a child victim may have more than one reason to not immediately come forward with allegations of sexual abuse. Hardy cites to no authority holding that a child victim may only provide one "plausible explanation" to explain why he or she waited to report recurring acts of sexual abuse. Accordingly, we reject these arguments and hold that the trial court did not abuse its discretion by admitting evidence of prior misconduct under ER 404(b).

D.    STATEMENT OF ADDITIONAL GROUNDS

Hardy also raises several challenges in a statement of additional grounds.  We hold that each of these challenges are without merit.

1.    Constitutional Right to a Fair and Impartial Jury

Hardy argues that trial court's voir dire process failed to protect his constitutional right to an impartial jury.  We disagree.

We review constitutional issues de novo.  *State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013).  The Sixth Amendment to the federal constitution and article I, section 22 of the Washington State Constitution guarantee a defendant the right to an impartial jury.  *State v. Yates*, 161 Wn.2d 714, 742, 168 P.3d 359 (2007), *cert. denied*, 554 U.S. 922 (2008).  "The 'impartial jury' aspect of article I, section 22 focuses on the defendant's right to have unbiased jurors, whose prior knowledge of the case or prejudice does not taint the entire venire and render the defendant's trial unfair."  *State v. Momah*, 167 Wn.2d 140, 152, 217 P.3d 321 (2009), *cert. denied*, 562 U.S. 837 (2010).  Voir dire is a significant aspect of trial because it allows parties to safeguard their article I, section 22 right to a fair and impartial fact finder through jury questioning.  *Id.*

Hardy argues that the trial court violated his constitutional right to a fair and impartial jury by failing to ask the jury venire whether they knew any of the parties involved in the case.  However, the record shows that the trial court did ask these questions to the jury venire through the juror questionnaire.  The juror questionnaire was not designated in the appellate record and the individual responses are sealed, but the record shows that one of the potential jurors failed to fill out a page of the questionnaire.  As a result, the trial court questioned the potential juror outside

the presence of the rest of the jury venire and allowed the attorneys to ask the questions the potential juror forgot to fill out. One of the questions was whether the juror knew the trial court judge, her judicial assistant, the court reporter, the deputy prosecuting attorneys, or the defense attorney. Next, the potential juror was given the names of the potential witnesses in the case and asked to indicate whether he or she recognized any of them. Thus, the record shows that the trial court did ask the jury venire whether they knew any of the parties involved in the case through the juror questionnaire.

Next, Hardy argues that the trial court violated his right to a fair and impartial jury because the trial court delayed in admonishing the jury to not conduct outside research on the case. However, the record shows that the trial court instructed the jury that they must learn everything about this case through the evidence at trial immediately after the jury was empaneled. The trial court also read to the empaneled jury a series of instructions including that "[i]t's essential to a fair trial that everything you learn about the case comes to you in this courtroom and only in this courtroom." 3 VRP (Feb. 23, 2017) at 431. The court further instructed, "You must keep your mind free of outside influences so that your decision will be based entirely on the evidence presented during the trial and on my instructions to you about the law." 3 VRP (Feb. 23, 2017) at 431. Thus, the trial court safeguarded Hardy's right to a fair and impartial jury after they were empaneled and before either side had presented any evidence. Accordingly, we hold that Hardy's challenge fails.

2.      Prosecutorial Misconduct

Hardy argues that the prosecutor improperly appealed to the passions and prejudice of the jury by eliciting testimony related to his minor daughter and by referencing his daughter during opening statement.  We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must show " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).  We review allegedly improper arguments of the prosecutor in the context of the total argument, the evidence addressed during argument, the issues in the case, and the trial court's instructions.  *State v. Russell*, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995).

It is improper for a prosecutor to " 'use arguments calculated to inflame the passions or prejudices of the jury.' " *State v. Thierry*, 190 Wn. App. 680, 690, 360 P.3d 940 (2015) (quoting *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012)), *review denied*, 185 Wn.2d 1015 (2016).  For example, in *Thierry*, we held that a prosecutor improperly appealed to the passions and prejudice of the jury by stating that if the defendant's argument had any merit, then the State might as well give up prosecuting child sex abuse cases.  *Id.* at 690-91.  Similarly, in *State v. Powell*, the court held that the defendant was denied a fair trial when the prosecutor argued to the jury that a not guilty verdict would be " 'declaring open season on children.' " 62 Wn. App. 914, 918, 816 P.2d 86 (1991), *review denied*, 118 Wn.2d 1013 (1992).

Hardy argues that the prosecutor here similarly appealed to the passion and prejudice of the jury by referencing E.E.'s testimony related to Hardy's five year old daughter. However, such comments were not improper when viewed in the context of the entire record and the circumstances at trial. The trial court granted the State's motion to elicit E.E.'s testimony that she came forward with her allegations partially out of fear for Hardy's daughter's safety. Because the trial court explicitly ruled the testimony admissible for this limited purpose, it was not improper for the State to make an argument related to that limited purpose. And contrary to Hardy's contention, the State never argued to the jury that they should convict Hardy in order to protect his five year old daughter. The State solely used this evidence to argue why E.E. came forward with the sexual abuse allegations at the time she did. Thus, the State did not appeal to the passions and prejudice of the jury, and Hardy's argument on this basis fails.

Hardy also argues that it was improper for the prosecutor to reference his daughter during opening statement. However, Hardy does not challenge the trial court's ruling allowing E.E. to subsequently testify that she came forward with her allegations out of fear for Hardy's daughter's safety. To prevail on a claim of prosecutorial misconduct, Hardy must show " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *Thorgerson*, 172 Wn.2d at 442 (quoting *Magers*, 164 Wn.2d at 191). Therefore, even assuming without deciding that it was improper for the prosecutor to reference this evidence before the trial court ruled on its admissibility, Hardy fails to show prejudice because the trial court later ruled this evidence admissible and Hardy does not challenge this ruling. Thus, Hardy's prosecutorial misconduct claim fails.

3.      Ineffective Assistance of Counsel

Hardy argues that his defense counsel was ineffective for failing to object to the State's references to his daughter during opening statement, trial, and closing argument. We disagree.

The right to effective assistance of counsel is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). To prevail in an ineffective assistance of counsel claim, the defendant must show (1) defense counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *Id.* at 32-33. Showing counsel's performance was deficient " 'requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Id.* at 32-33 (quoting *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987)). In order to establish prejudice, the defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *State v. Gerdts*, 136 Wn. App. 720, 726-27, 150 P.3d 627 (2007). Thus, in order to establish deficient performance for counsel's failure to object, the defendant must show that the objection would likely have been successful. *Id.* at 727.

Here, Hardy's trial counsel objected to the State's line of questioning related to Hardy's daughter during trial, but the trial court overruled the objection. Therefore, Hardy fails to show that his counsel was ineffective for failing to object to the testimony. And given that the trial court ruled the testimony admissible over defense objection, Hardy cannot show that continuing to

object to this evidence would likely have been successful. Because Hardy fails to show that the outcome of the proceeding would have differed, he fails to show resulting prejudice.

Hardy also argues that his counsel was ineffective for failing to object to the prosecutor's statements related to his daughter during the State's opening statement. Assuming without deciding that the State's comments were improper, Hardy's ineffective assistance of counsel claim on this basis fails because Hardy fails to show resulting prejudice.

Again, in order to establish prejudice, Hardy must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Gerdts*, 136 Wn. App. at 726-27. However, as discussed above, Hardy does not challenge the trial court's ruling allowing E.E. to subsequently testify that she reported Hardy's abuse out of fear for his daughter's safety. Therefore even if Hardy's counsel had objected to these references during opening statement, the outcome of the proceeding would not have differed because the trial court later allowed this testimony over defense objection. Accordingly, we hold that Hardy's ineffective assistance of counsel claim fails.

4.    Cumulative Error

Hardy claims that the cumulative effect of the trial errors deprived him of his constitutional right to a fair trial. The cumulative error doctrine may entitle a defendant to a new trial when cumulative errors produce a trial that is fundamentally unfair. *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). However, as discussed above, Hardy fails to show any error and thus the cumulative error doctrine does not apply.

5.      Same Criminal Conduct in Offender Score

Hardy argues that his offender score at sentencing should have been zero because the State failed to prove separate and distinct acts to support four acts of first degree child rape. Hardy argues that because the evidence was insufficient to prove separate and distinct acts to support three of the counts he was convicted of at trial, these crimes constituted same criminal conduct and his offender score should have been zero.

At sentencing, the offender score is calculated by adding a specified number of points for each prior offense. RCW 9.94A.525.[7] However, for purposes of this calculation, current offenses are treated as prior convictions. RCW 9.94A.589(1)(a). Therefore, a sentencing court's determination that the crimes constitute the same criminal conduct alters the offender score and affects the standard sentencing range. *State v. Graciano*, 176 Wn.2d 531, 535, 295 P.3d 219 (2013). Crimes constitute the "same criminal conduct" if they " 'require the same criminal intent, are committed at the same time and place, and involve the same victim.' " *Id.* at 536 (quoting RCW 9.94A.589(1)(a)). We will not disturb the sentencing court's determination of same criminal conduct absent an abuse of discretion. *Id.*

As discussed above, the State presented sufficient evidence at trial to show Hardy committed four separate and distinct acts of first degree child rape involving E.E. Because the evidence showed that these separate and distinct acts were not committed at the same time and

_____

[7] RCW 9.94A.525 has been amended since the events of this case transpired. However, these amendments do not materially affect the statutory language relied on by this court. Accordingly, we refrain from including the word "former" before RCW 9.94A.525.

place, it was not manifestly unreasonable for the trial court to find that they did not constitute same criminal conduct. Thus, Hardy's challenge to his offender score fails.

Hardy also argues that his trial counsel was ineffective for not making the same criminal conduct argument at sentencing. However, because he fails to show that such argument would have been successful, Hardy fails to show prejudice and his ineffective assistance of counsel claim on this basis also fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Bjorgen, J.